UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                    :    Chapter 7

JENNIFER ST. HILL                        :

         Debtor          :    Bankruptcy No. 04-30919F

.................................................

MEMORANDUM

.................................................

Before me is the chapter 7 trustee's objection to the debtor's latest amended claims for exemption.  The debtor asserts that her real and personal property are exempt under Pennsylvania law.  Previously, she had asserted that this property was exempt by virtue of federal bankruptcy law, which assertion was successfully challenged, in part, by a prior objection from the trustee.

The trustee, Marvin Krasny, Esquire, now objects to the allowance of the debtor's amended state law exemption claims on the bases of: res judicata; laches and prejudice; bad faith; the existence of joint unsecured debts; and the misapplication of state law as to certain personal property.  The debtor defends her amended exemptions against the trustee's numerous challenges.[1]

An evidentiary hearing was held wherein the following relevant facts were proven.

---

[1]The debtor also suggests in her memorandum that no determination of the trustee's objection should be made until her motion under section 707(a) to voluntarily dismiss this case is resolved.  That dismissal request, however, was just filed and will not be heard for 30 days.  Furthermore, this chapter 7 case has been pending for more than one year.  Therefore, I decline the debtor's invitation to delay the ruling in the present dispute.

I.


A.


I begin with a lengthy chronology of some of the numerous filings and orders entered in this bankruptcy case, as the trustee asserts that these filings and orders support his pending objections.

The debtor filed a voluntary bankruptcy petition under chapter 7 on August 11, 2004, and estimated on her petition that she had no non-exempt property available for distribution to creditors.  See Voluntary Petition ("Statistical/Administrative Information").  On September 7, 2004, she filed her bankruptcy schedules and statement of financial affairs as mandated by Fed. R. Bankr. P. 1007(b).  Ex. T-1.

On Schedule A, the debtor disclosed ownership of real property located at 217 West Indian Creek Road, Wynnewood, PA, which property she valued at $542,000.00, with secured claims of $640,843.38.  Id. (Schedules A & D).  She listed this real property as jointly owned with her husband, and identified the lien claims against the property as joint debts.  Id.  On Schedule B, the debtor revealed various items of personal property, including a 2003 Ford Expedition and a 1999 Lexus automobile.  She valued this personal property in the total amount of $44,550, and disclosed that all of this property was owned solely by her.  Id. (Schedule B and Summary).

On Schedule C, the debtor elected the federal bankruptcy law exemptions found in 11 U.S.C. § 522(d).[2]  Thereafter, she claimed that all of her property, including the Wynnewood real property, were exempt by virtue of 11 U.S.C. § 522(d)(1)-(d)(5).[3] Ex. T-1 (Schedule C).  On Schedule F, the debtor listed all her creditors holding unsecured claims.  On that schedule, she identified 10 creditors that held claims jointly against herself and her husband.  Id.  Among those creditors was "PIDC", which was scheduled as holding two joint unsecured claims totaling $2,872,168.15.  Id.

Shortly thereafter, on September 15, 2004, the debtor filed an amended Schedule F (the list of unsecured creditors) as well as an amended Statement of Financial Affairs.  Ex. T-2.  These amendments did not alter the number of joint unsecured creditors, nor did they modify the amounts scheduled as owed to PIDC on two claims.  Id.

The chapter 7 trustee then presided over a meeting of creditors, pursuant to section 341, on October 5, 2004.  The docket entries reflect that he filed on that same date a report stating that this meeting had not been concluded, and that he was investigating the possibility that the debtor had an interest in non-exempt property.  See Ex. T-11 (docket Entry #18).

---

[2]By virtue of section 522(b)(1), individual debtors can elect between the federal exemptions found in section 522(d) and state law exemptions, unless state law precludes an election of the federal exemptions.  Pennsylvania has not opted out of the federal exemptions. See Kaplan v. First Options of Chicago, Inc., 189 B.R. 882, 888 n.6 (E.D. Pa. 1995). Accordingly, debtors in this district may choose between state and federal bankruptcy exemptions.

[3]The debtor actually scheduled the value of the claimed exemption of her real property as $0.00, possibly based upon her assertion that the liens against the realty exceeded its value.

On November 10, 2004, the debtor filed her second set of amendments to the bankruptcy schedules.  Ex. T-3.  Among other matters, these amendments increased the disclosed value of her jointly owned real property to $552,000 (schedule A[4]), added three personal property items relating to stock ownership on schedule B (without changing her assertion that all personal property listed was owned solely by her), and claimed these stock ownership interests exempt by virtue of section 522(d)(5) on an amended schedule C.  Ex. T-3.

On November 24, 2004, the trustee concluded the meeting of creditors, and again reported that he was investigating the existence of non-exempt property.  Ex. T-11 (docket entry # 41).  To assist in that investigation, and to aid in the recovery and disposition of all non-exempt property, on December 6, 2004, the trustee filed an application to engage counsel.  Ex. T-11 (docket entry # 44).  That application (as later modified) was approved on December 16, 2004.  Ex. T-11 (docket entry # 52).

On December 27, 2004, the trustee filed a motion to compel the debtor to provide access to her real property.  On December 29, 2004, the trustee also filed an objection to the debtor's amended claim of exemptions as scheduled on November 10th. The trustee's objection, in part, stated that the debtor's residence should be valued at more than the $552,000 that the debtor reported,[5] alleged that there was substantial equity in the property, and asserted that, under section 522(d)(1), the debtor was limited to an

---

[4]The debtor still estimated the value of the claimed exemption of her realty as $0.00.

[5]The trustee's objection had referenced the attachment of a document estimating the value of the real property at $900,000, but no such attachment was included with this pleading.

$18,450 homestead exemption in this equity.  The debtor did not oppose the trustee's

exemption objection in any fashion.  On February 2, 2005, I sustained the trustee's

objection and entered an order: limiting the debtor's real property exemption under

section 522(d)(1) to an amount not to exceed $18,450; striking a personal property

exemption under section 522(d)(2) as duplicative; and restricting the debtor's 522(d)(5)

exemption in outstanding receivables to $975 plus any unused homestead exemption.  Ex.

T-7.  I also issued an order that day granting the trustee's appraiser access to the debtor's

real property.  Ex. T-11 (docket entry #84).  The debtor did not file a notice of appeal

from either of these orders.

On February 15, 2005, the trustee filed an application to engage a real estate

appraiser.  Almost immediately thereafter, on February 17, 2005, the debtor filed her third

group of amended schedules, this time involving schedules B, C, I and J, as well as her

Statement of Financial Affairs.  Ex. T-4.   These amendments, inter alia, added to her list

of personal property two previously undisclosed bank accounts (valued at a total of

$1,000), which accounts were then claimed as exempt under section 522(d)(5).  Id.  The

debtor continued to elect the federal bankruptcy exemptions on her newly amended

schedule C.  Id.

On March 17, 2005, I entered an order permitting the trustee to engage a

real estate appraisal firm named Pamela Lazar Appraisals.  Ex. T-11 (docket entry #104).

On April 4, 2005, Mr. St. Hill, the debtor's husband, was granted relief from the

automatic stay to prosecute a child custody action against the debtor in state court.  Ex. T-

11 (docket entry #118).  On April 11, 2005, the trustee moved to engage a real estate

broker, which request was granted on April 15, 2005.  Ex. T-11 (docket entries ##122,

125).  The trustee also filed another motion, on April 22, 2005, to require the debtor to

provide access to her real property.  Ex. T-11 (docket entry #128).  The debtor filed an

answer in opposition to this motion on May 5, 2005.[6]  On April 25, 2005, the trustee filed

a notice with the clerk of court that there were non-exempt assets available for

distribution to creditors.  Ex. T-11 (docket entry #131).[7]

On May 27, 2005, the debtor filed her fourth set of amendments to her

bankruptcy schedules.  Ex. T-6.  On amended schedule B, the debtor now asserted that

most of her personal property was jointly owned with her husband, rather than being

owned solely by herself.  Id.  In addition, on her newly amended schedule of exemptions,

schedule C, the debtor attempted to change her exemption election from federal

bankruptcy law, i.e., section 522(d), to non-bankruptcy law, i.e., state law.  In other

words, by this amendment the debtor was asserting for the first time that her real and

personal property were exempt under Pennsylvania law.  Ex. T-6.  Citing for most items

"Pa. Entireties Law," the debtor scheduled as exempt her interest in the realty, which she

---

[6]For reasons not explained, the trustee withdrew his motion to compel access on May 6, 2005, and on that same date filed another motion requesting the same relief.  The debtor filed her response to this second motion on May 10, 2005.

[7]This notice then triggered notice from the clerk to creditors, informing them that a 90 day bar date has just been set for the filing of proofs of claim.  See Fed. R. Bankr. P. 3002(c)(5); Ex. T-11 (docket entry #136).  Prior to such notice, creditors had been informed that they need not file any proofs of claim, based upon the debtor's estimate that no dividend to creditors would be made.  See Fed. R. Bankr. P. 2002(e); Ex. T-11 (docket entry #13).

now valued at $600,000,[8] plus numerous items of personalty.  Other personal property

was claimed as exempt pursuant to 42 Pa. C.S.A. §§ 8123 or 8124.  Id.

On June 23, 2005, the trustee filed his instant objections to the debtor's

May 2005 amended exemptions.  Realizing perhaps that simply amending her exemption

election to Pennsylvania law might accomplish little by itself (for reasons to be discussed

below), debtor's counsel, on June 27, 2005, for the fifth time submitted amended

schedules.  This time, the debtor filed an amendment to schedule F—the disclosure of all

unsecured creditors—so that she now asserted that all of her unsecured creditors (except

the Internal Revenue Service) purportedly held claims against only the debtor, rather than

some holding joint claims against the debtor and her husband.  Ex. T-5.  Thus, the debtor

for the first time maintained, inter alia, that the claims of PIDC were solely against her.

While the debtor may now contend that PIDC holds no claim against her

husband, the claims register reflects that PIDC Local Development Corporation filed an

unsecured proof of claim in the amount of $3,414,474.70, based upon a loan

guarantee/suretyship.  Ex. T-8.  Attached to this claim is a copy of the guarantee or

suretyship agreement signed by the debtor and her husband.  Id.

In addition to this proof of claim, National Penn Bank filed a secured proof

of claim in the amount of $631,485.30, with the collateral being the Wynnewood real

property located on Indian Creek Road.  Ex. T-9.  The court claims register also reveals

total unsecured proofs of claims in the amount of $3,548,589.97.  Ex. T-10.

---

[8]The debtor contends that the new realty valuation of $600,000 was an "erroneous
transposition of the amount set forth on Schedule 'A,' i.e., $552,000, onto a Summary of
Schedules."  See Debtor's Memorandum, at 2.  Although I do not sustain the trustee's argument
that this modified valuation, later reduced, constitutes bad faith, I confess that I do not find the
debtor's explanation understandable.

Finally, for purposes of this chronology, I note that a hearing was held on the trustee's motion to compel access to the debtor's real property along with the debtor's opposition thereto.  After review of the parties' submissions, I granted the trustee's motion on the terms specified in my memorandum and order dated June 13, 2005.  Thereafter, the trustee filed an adversary proceeding seeking permission to sell the debtor's and her non-debtor husband's interest in the Wynnewood realty, pursuant to 11 U.S.C. § 363(h).  That proceeding is still pending.

B.

While the trustee presented only documentary evidence in support of his objections, the debtor offered testimony from herself and her husband.

This testimony revealed that the debtor is a licensed attorney, but does not practice bankruptcy law.  N.T. at 10.  She stated that she paid little or no attention to the classification of her debts as individual or joint when initially completing her bankruptcy schedules.  N.T. at 11.  Now that she has concentrated on this issue, she has concluded that only her mortgage and tax obligations are joint debts.  N.T. at 11-12.

The debtor also testified that her scheduled valuation of the Wynnewood realty, which residence is currently occupied by herself, her husband, and her three children, was based upon a document from the county assessor's office.  N.T. at 13.  (That document was not offered in evidence, nor shown to the witness.)

The debtor is a shareholder of a corporation called St. Hill and Associates, P.C., which entity was a collection agency she ran with her husband.  N.T. at 29.  Her

8

husband was corporate CEO.  N.T. at 18, 28.  She testified that she is the sole guarantor

of the PIDC loan obligation, N.T. at 21-22; however, both debtor and her husband

concede that he signed the loan guarantee or suretyship agreement.  Ex. T-8; N.T. at 23-

24, 26.  Mr. St. Hill stated that although he signed this loan document, he believes he did

so only in a capacity as a witness.  N.T. at 26-27.  (Beside the signatures of the debtor and

her husband, there appear to be signatures of two witnesses on Ex. T-8.)  PIDC seems not

to agree with the debtor's assessment of her husband's liability, because Mr. St. Hill has

been named by that creditor as a defendant in a pending state court lawsuit.  N.T. at 30-

31.  Mr. St. Hill stated that he is hoping that PIDC will cease its lawsuit against him and

is negotiating for that result.  N.T. at 32.

Finally, when the debtor commenced her bankruptcy case, she and her

husband were estranged and the latter did not reside at the Wynnewood home.  N.T. at 8-

9.  A few months ago, they apparently reconciled, N.T. at 9, 24, and he now opposes the

trustee's sale of the realty.  N.T. at 25.

II.

Fed. R. Bankr. P. 4003(b) requires that any objection to an amended

exemption claim be filed within 30 days.  The failure to timely object to these amended

exemptions may result in their being allowed, regardless of their merit.  See Taylor v.

Freeland & Kronz, 503 U.S. 638 (1992).  Therefore, I understand the trustee's perceived

need to object to the debtor's May 2005 amended exemptions, and he has done so within

the requisite time limit.  Nonetheless, the practical significance of either allowing or

9

disallowing the debtor's newly claimed state law exemptions cannot presently be
answered.

In all likelihood, the most valuable asset the debtor owns, and an asset that
the trustee apparently believes will afford a meaningful distribution to creditors, is her
real property in Wynnewood. The debtor opposes the trustee's sale of the realty, and her
recently amended bankruptcy schedules are obviously designed to support this opposition.
But other than a conclusory statement by the debtor that the realty is worth about
$550,000, and an unproven assertion by the trustee that an appraiser has valued the realty
at $1.5 million, Trustee's Memorandum, at 11 (no appraisal testimony or report was
offered), there is no persuasive evidence by which one can value this property at present.

North Penn Bank, the mortgagee, has filed a claim stating that it is owed
more than $630,000. Unless the value of the realty, after costs of sale, exceeds the
amount due this mortgagee and any other creditor with a valid lien against this collateral,
the trustee will be unable to sell the realty. See, e.g., In re K.C. Machine & Tool Co., 816
F.2d 238, 246 (6th Cir. 1987) (trustee should abandon property if the liens exceed the
value of the collateral). Therefore, the practical effect of this objection to the
administration of this chapter 7 bankruptcy case depends upon the value of the realty.
The trustee hopes to demonstrate its considerable worth after marketing the property.

There is a second reason that renders the importance of this dispute
questionable. If PIDC holds an allowed unsecured claim for $3.4 million jointly against
the debtor and her husband, as it has asserted in its filed proof of claim, then the debtor's
attempted election change from the federal homestead exemption under section 522(d)(1)
to Pennsylvania's entireties exemption is largely ineffective.

10

Under Pennsylvania law, entireties property is not owned by either spouse; rather, it is owned by the marital unit. See, e.g., Lindenfelser v. Lindenfelser, 396 Pa. 530, 534 (1959); In re Estate of Bullotta, 798 A.2d 771, 774 (Pa. Super. 2002). Thus, in Pennsylvania, a creditor of only one spouse cannot execute on property owned by both spouses as tenants by the entireties, because the marital unit itself is not the obligor. See, e.g., Napotnik v. Equibank and Parkvale Sav. Ass'n, 679 F.2d 316, 319 (3d Cir. 1982); Klebach v. Mellon Bank, N.A., 388 Pa. Super. 203 (1989); Reliance Ins. Co. v. Schoolfield Constr. Co., 14 Pa. D. & C. 4th 490, 494 (Pa. Com. Pl. 1992).

Under section 522(b)(2)(B), Congress permits a debtor to claim as exempt in her bankruptcy case all entireties property owned by the debtor and non-debtor spouse to the extent that property is exempt under applicable nonbankruptcy law. In Pennsylvania, this results in tenancy by the entireties property being exempt from the claims of creditors who hold claims only against one spouse. Napotnik v. Equibank and Parkvale Sav. Ass'n; see also In re Cordova, 73 F.3d 38, 40 (4th Cir. 1996). This entireties exemption, however, is not allowed against a creditor with a claim against both spouses. Napotnik v. Equibank and Parkvale Sav. Ass'n; see Sumy v. Schlossberg, 777 F.2d 921, 928 (4th Cir. 1985); In re Pepenella,103 B.R. 299, 302 (M.D. Fla. 1988).

Accordingly, if the debtor's Wynnewood residence has a net worth in excess of its liens, and if PIDC holds a valid unsecured joint claim, the trustee may be entitled to sell the realty, whether or not the debtor's amended exemption claim is

allowed.[9]  In those circumstances, the import of the trustee's current challenge would be felt only by the non-joint creditors of the debtor.  These individual creditors could only receive a distribution from the sale of the debtor's realty if the trustee's present objection were sustained.  However, the extent of the distribution to such individual creditors, and thus the benefit they would receive from this dispute, would be affected by the size of PIDC's allowed unsecured claim.

I appreciate that the debtor and her husband now contend that PIDC holds only an individual claim against the debtor.  While that issue is not presently before me, my review of the guarantee/suretyship agreement, Ex. T-8, does support the trustee's contention that it was signed by Mr. St. Hill as a guarantor/surety, and not as a witness.  Therefore, it is likely that PIDC holds a joint claim.

For the reasons just expressed, I have doubts about the practical significance of the instant contested matter before me.  Nonetheless, I cannot conclude that the outcome is clearly irrelevant to the administration of this case.  And as both parties have had the opportunity to fully present and argue their respective positions, I now turn to the trustee's specific objections to the debtor's amended exemption claim, recognizing that future rulings or events may determine its import.

---

[9]The limit on the trustee's ability to sell would stem from section 363(h).  A bankruptcy trustee can only sell property owned by a debtor and a non-debtor in certain circumstances defined by that subsection.  The trustee has filed a complaint for relief under section 363(h) and Mr. St. Hill has opposed it.  That proceeding is presently pending, and its outcome is unaffected by whether the debtor can now elect the state exemptions.  See Schlossberg v. Barney, 380 F.3d 174, 182 (4th Cir. 2004) ("11 U.S.C. § 363(h) . . . permits a trustee to sell entireties property for the benefit of joint creditors of the debtor and her spouse . . . under certain circumstances.).

III.


As I noted at the outset of this memorandum, the trustee raises five grounds for denying the debtor her current effort to elect Pennsylvania exemption laws to protect her interest in real and personal property from liquidation by the trustee.  First, the trustee asserts that the debtor cannot amend her exemption schedule "at this late date because the exemptions have been litigated and the issue regarding the exemptions is res judicata." Motion, ¶ 11.  Similarly, the trustee also asserts that allowing the debtor to amend her exemptions at this time is prejudicial to the trustee, who has proceeded to administer the assets based upon the debtor's election of the federal exemptions.  Motion, ¶ 12.  Third, the trustee argues that the debtor amended many of her schedules in bad faith; she has grossly undervalued her real property; and she is not paying the mortgage on her property, evidencing a lack of intent to preserve the value of her property, but rather just buying time to reside on the property at her creditors' expense.  The trustee maintains that such conduct warrants a denial of the amended exemptions.

The trustee also contends that the debtor is not entitled to exempt the property under the Pennsylvania entireties law to the extent that her debts are held jointly with her husband, the co-owner of entireties property.  And, finally, the trustee contends that certain real property is not exempt under 42 Pa.C.S.A. §§ 8123 and 8124, as claimed by the debtor.

For purposes of this contested matter I need only discuss three of the trustee's contentions.

13

A.

Although Fed. R. Bankr. P. 1009(a) affords a debtor the opportunity to amend her bankruptcy schedules, including her schedule of exemptions, at any time prior to the closing of the case, see, e.g., Matter of Yonikus, 996 F.2d 866, 871-72 (7th Cir. 1993), it is well understood that this right to amend has certain equitable constraints. See In re Kaelin, 308 F.3d 885, 889 (B.A.P. 8th Cir. 2002); Matter of Yonikus, 996 F.2d at 872; In re Doan, 672 F.2d 831, 833 (11th Cir. 1982).

Given the tremendous number of bankruptcy cases filed, careful investigation of a debtor's financial affairs by creditors, the bankruptcy trustee, or the court cannot be viewed as a routine procedure. For that reason, debtors must fully and honestly answer the questions posed to them by the official forms—particularly, the statement of financial affairs and the bankruptcy schedules. See In re Tully, 818 F.2d 106, 110 (1st Cir. 1987) ("The [bankruptcy] statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction. . . . Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight."); Payne v. Wood, 775 F.2d 202, 205 (7th Cir. 1985) ("The operation of the bankruptcy system depends on honest reporting."). Therefore, in a voluntary chapter 7 bankruptcy filing such as this one, the debtor—who knows or should know all relevant information about her financial affairs—must bear primary responsibility for accurate and complete bankruptcy schedules and financial statement.

14

Accordingly, when a debtor willfully or recklessly fails to accurately disclose her financial affairs to the bankruptcy trustee and her creditors, she may, in certain instances, lose her ability to claim property as exempt.  Typically, the loss of that right comes from a willful or reckless failure to disclose the existence of an asset.  See, e.g., Matter of Yonikus, 996 F.2d at 868; In re Grogan, 300 B.R. 804, 808 (Bankr. D. Utah 2003).  The ability to claim an exemption may also be lost by the willful or reckless valuation of an asset.  Grossly undervaluing an asset may preclude the debtor from amending her exemption schedules.   See, e.g., In re Hannigan, 409 F.3d 480 (1st Cir. 2005); In re Bauer, 298 B.R. 353, 357 (B.A.P. 8th Cir. 2003).  Thus, were a debtor to swear to the trustee on her schedules that a $1.5 million property was worth only $550,000, this may well justify denial of an amendment to exempt that property.  Cf. In re Colvin, 288 B.R. 477, 482 (Bankr. E.D. Mich. 2003) (the size of the undisclosed asset may itself be evidence of intentional or reckless conduct).

In this instance, the trustee complains that the debtor has grossly undervalued her home and recklessly classified certain of her creditors as holding first joint and then individual claims.[10]  Insofar as the value of the Wynnewood property is concerned, as mentioned earlier, I cannot reach any conclusion on the basis of the evidentiary record before me.

---

[10]The trustee might have also noted in this regard that the debtor has changed her position as to the ownership of much of her personal property.  His expressed concern, however, about the debtor's lack of mortgage payments fails to acknowledge that few if any chapter 7 debtors will tender mortgage payments when a bankruptcy trustee is trying to sell their residence. And if the realty is over-encumbered, the mortgagee can protect its interest by seeking relief under section 362(d).

I find it a closer question regarding the debtor's recent attempted modification of the classification of her joint obligations to individual ones, and the change of ownership of her personal property from individual to joint.  As an attorney, and as one who was involved in state family court litigation with her then estranged husband,[11] one might expect that the facts surrounding outstanding liabilities and property ownership would have been well known to her. While carelessness or oversight by a debtor may not constitute bad faith, see In re Hannigan, 409 F.3d at 483, reckless conduct may.  See In re Rolland, 317 B.R. 402, 415-16 (Bankr. C.D. Cal. 2004) (debtors acting with reckless disregard for accuracy of information contained in their schedules, failing to disclose substantial value in their home, have been denied right to amend exemptions for bad faith) (citing In re Bauer).

Were this the only reason offered by the trustee to deny the debtor's proposed amendment, I may not be persuaded.  See generally In re Kaelin.  However, because the issues of res judicata and prejudice are clearly demonstrated, I shall focus upon them.

B.

Res judicata, or claim preclusion "applies to claims that 'were or could have been raised' in a prior action involving the 'parties or their privies' when the prior action had been resolved by 'a final judgment on the merits.'"  In re Graham, 973 F.2d 1089,

---

[11]I infer the existence of this litigation from Mr. St. Hill's motion to terminate the bankruptcy stay to resolve a pending state court custody dispute.

1093 (3d Cir. 1992) (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)); see also

Lubrizol Corp. v. Exxon Corp., 929 F.2d 960, 963 (3d Cir. 1991) ("Federal law of claim

preclusion requires a defendant to demonstrate that there has been (1) a final judgment on

the merits in a prior suit involving (2) the same parties or their privies and (3) a

subsequent suit based on the same cause of action.").  "Claim preclusion thus bars

relitigation of any claim that could have been raised in the prior action even if it was not

so raised."  In re Graham, 973 F.2d at 1093.

Although application of this preclusion principle in bankruptcy cases most

often involves prepetition state court judgments, see generally In re Genesys Data

Technologies, Inc., 245 F.3d 312 (4th Cir. 2001), it also applies to all bankruptcy court

rulings that are final orders.  See In re Fulton Bellows & Components, Inc., 301 B.R. 723

(Bankr. E.D. Tenn. 2003) (denial of debtor's motion to reject union contract, pursuant to

11 U.S.C. § 1113, precluded a second motion for the same relief, even though new

proposals had been offered to the union).  For example, an order granting debtor's

counsel's application for an allowance of fees may preclude a later malpractice claim

against that attorney, if the claim is based upon the quality of the bankruptcy

representation.  See, e.g., Grausz v. Englander, 321 F.3d 467 (4th Cir. 2003); In re

Iannochino, 242 F.3d 36 (1st Cir. 2001).

In this contested matter, the chapter 7 trustee is correct that the preclusive

effect of res judicata has been deemed relevant to disputes involving objections to a

debtor's exemption claims.  See, e.g., In re Wolfberg, 255 B.R. 879 (B.A.P. 9th Cir.

2000); In re Magallanes, 96 B.R. 253 (B.A.P. 9th Cir. 1988); In re Daniels, 270 B.R. 417

(Bankr. E.D. Mich. 2001).  This follows because an order either sustaining or overruling

an objection to an exemption claim is subject to immediate appeal and thus constitutes a

final judgment, as defined by Fed. R. Bankr. P. 7054(a).[12] See, e.g., Kollar v. Miller, 176

F.3d 175 (3d Cir. 1999) (appeal from order sustaining the trustee's objection to the

debtor's exemption); In re Price, 2004 WL 2550590 (W.D. Tex. Oct. 27, 2004) (appeal

from a denial of an objection to an exemption); In re Ladd, 319 B.R. 599, 603 (B.A.P. 8th

Cir. 2005) ("The order resolving the objection to the exemption is a final judgment."); see

also 9 Collier on Bankruptcy, ¶ 4003.03[2], at 4003-13 (15th ed. rev. 2005) ("An order

denying a claim of exemption is a final, appealable order.").

Recently, claim preclusion was utilized by the Bankruptcy Appellate Panel

for the Eighth Circuit to bar an attempt by debtors to amend their exemption election from

federal bankruptcy law to state law.  In re Ladd.  In so doing, the appellate court observed

that while Fed. R. Bankr. P. 1009(a) permits a debtor to file amended schedules,

including amendments of the exemption schedule, this procedural rule does not mandate

that such amended exemptions be allowed:

> Rule 1009 does not prevent the Trustee from objecting to a
> newly asserted exemption nor does it prevent the bankruptcy
> court from denying a new theory for exempting property on
> the grounds of res judicata where the court has already ruled
> on the exemptibility of such property.

Id., at 603.

In other words, where a debtor has claimed certain property as exempt, the

bankruptcy trustee has objected to that exemption claim, and there has been a final, non-

_____

[12]Rule 7054(a) incorporates Fed. R. Civ. P. 54(a).  The latter defines a judgment
as including "any order from which an appeal lies."  And Fed. R. Bankr. P. 9014(c) incorporates
Rule 7054 into contested matters, such as objections to exemption claims.  See In re Daniels, 270
B.R. 417, 421 (Bankr. E.D. Mich. 2001); In re Bandkau, 187 B.R. 373, 374 (Bankr. M.D. Fla.
1995).

appealed ruling sustaining the trustee's objection, all of the elements of claim preclusion have been established, and so the debtor cannot later amend her exemptions to claim that same property as exempt under a different statute:

> Once an objection to the exemption of an asset has been filed, the debtor must raise all theories for the exemption of that asset prior to the resolution of the exemption issue. Otherwise, res judicata prevents a later attempt to exempt the asset on a different theory.

Id., at 603.[13]

Accordingly, in Ladd, where a bankruptcy trustee had successfully objected to the debtors' claim of a federal homestead exemption based upon section 522(d)(1), the debtor was not permitted more than one year later to file an amended exemption schedule C seeking to claim that same real property as exempt under state law.

The result in Ladd was presaged by two decisions from the Bankruptcy Court for the District of Minnesota. In re Walls, 249 B.R. 506 (Bankr. D. Minn. 2000), a debtor claimed as exempt his interest in an IRA account under federal bankruptcy law, and the trustee objected. After the trustee's objection was sustained, the debtor was barred from amending his exemption to claim that IRA account as exempt under state law. Similarly, in In re Marshall, 224 B.R. 399 (Bankr. D. Minn. 1998), a debtor was precluded from amending his exemption claim involving a pending tort action to utilize federal bankruptcy law after the trustee's successful objection to the debtor's earlier exemption claim of that same asset under state law.

---

[13]The debtor contends that a debtor is always free to amend her exemptions unless the order sustaining the objection expressly states otherwise. Debtor's Memorandum, at 2. She cites no authority for this contention and I find it unpersuasive. Unless the order resolving the exemption dispute grants leave to amend, claim preclusion will result.

As so limited, the application of res judicata will not preclude a debtor from filing amended exemptions under Rule 1009(a), unless a final order denying an exemption claim for the same asset has previously been entered.  See generally In re Magallanes.  As a result, whenever a trustee has filed an exemption objection, the debtor is obligated to analyze this objection and make any necessary amendments prior to any ruling; not afterward.

As one court has observed, the obligation of a debtor to carefully review and modify her exemption claims when challenged by the bankruptcy trustee, or be precluded from later amendment, mirrors the trustee's duty to analyze promptly the debtor's exemption claims or be barred from any later challenge, as held in Taylor v. Freeland & Kronz.  Both requirements have a salutary effect upon the administration of bankruptcy cases:

> They promote the expeditious resolution of exemption claims and the efficient administration of the bankruptcy estate. The inverse implication of Taylor's holding that the trustee is precluded from asserting a valid objection to a debtor's claimed objection, where he has failed to object within the time limits established by the procedural rules, is that the debtor may not assert a valid claim of exemption, where he has failed to appropriately defend that claim when attacked by the trustee's objection.

In re Daniels, 270 B.R. at 424.

In this dispute, the record is clear that the trustee objected to the debtor's exemption claims in December 2004 and his objection as to the debtor's realty (and other property) was sustained by a final order dated February 2, 2005.  The debtor did not file a notice of appeal from this adjudication, nor did she seek reconsideration under Fed. R. Bankr. P. 9023, nor relief from that order by virtue of Fed. R. Bankr. P. 9024.

20

Accordingly, her amended schedule C, filed more than three months later, to exempt the same property but utilizing a different legal theory is now barred.[14]

C.

The trustee also maintains that even if the debtor were not prohibited from amending her exemption claims by the preclusive effect of the February 2005 order, her current attempt to do so must be barred as prejudicial. I shall consider this alternative argument. See In re Daniels (finding both res judicata and laches applicable as a bar against the debtors' attempt to amend their exemption claims).

As I previously observed in In re Cudeyro, 213 B.R. 910 (Bankr. E.D. Pa. 1997), it is well settled that a debtor's right to amend her exemptions will be prohibited upon a showing of bad faith or prejudice. See, e.g., In re Hannigan, 409 F.3d at 481 ("[A] bankruptcy court has discretion to deny the amendment of exemptions where the

---

[14]While a debtor in Pennsylvania may elect either the federal bankruptcy exemptions or the state exemptions by virtue of section 522(b), she "cannot elect the most favorable exemptions in each scheme: [s]he must weigh the advantages of each scheme and then choose one or the other." Matter of Dyke, 943 F.2d 1435, 1438 (5th Cir. 1991). (Indeed, in joint bankruptcy cases, both spouses must make the same election. See 4 Collier on Bankruptcy, ¶ 522.04[6] (15th ed. rev. 2005)). In other words, a debtor cannot claim some property as exempt under state law and other property as exempt under federal bankruptcy law. Section 522(b) requires her to choose only one exemption scheme for all property.

The February 2005 order addressed the debtor's claim of federal bankruptcy exemptions, and she is now limited to that choice. Therefore, I need not consider whether the debtor's May 2005 amended state law exemption claims involve property not previously claimed as exempt.

In addition, since the trustee never objected to the debtor's February 17, 2005 amendment to her exemptions, which amendment still elected the federal bankruptcy exemptions, I need not address whether any aspect of that earlier amendment was precluded. See E.E.O.C. v. U.S. Steel Corp., 921 F.2d 489, 491 n.2 (3d Cir. 1990) (res judicata defense may be waived).

21

amendment would prejudice creditors or where the debtor has acted in bad faith or concealed assets."); In re Kaelin, 308 F.3d at 888; Payne v. Wood, 775 F.2d at 205; In re Doan, 672 F.2d at 833.

Since amendments to schedules are generally permitted as a matter of course, it is incumbent upon the party objecting to the proffered amendment to demonstrate that prejudice or bad faith warrant denial of the right to amend a debtor's exemption claims. Tignor v. Parkinson, 729 F.2d 977, 979 (4th Cir. 1984); see In re Kobaly, 142 B.R. 743, 748 (Bankr. W.D. Pa. 1992). One indicia of prejudice appears to be the existence vel non of reliance made upon the debtor's exemption election prior to the proffered amendment.

Thus, prejudice may arise, for example, where a trustee has engaged in efforts to sell certain property, which efforts he or she might have foregone had the debtor initially claimed such property as exempt. That is, in those instances the trustee may be understood to have acted in reliance upon the debtor's initial schedules, and having taken such actions may be prejudiced if the amendments were allowed. See, e.g., Matter of Eldridge, 15 B.R. 594, 595 (Bankr. S.D.N.Y. 1981) (debtors attempted to change exemptions after trustee had contracted to sell the subject property); In re Santoro, 3 B.R. at 212 (debtors attempted to claim exemptions after the trustee had sold subject property); see also Hardage v. Herring Nat. Bank, 837 F.2d 1319, 1324 (5th Cir. 1988) (prejudice may occur if creditors have detrimentally relied upon the debtor's original exemption claim).

Another instance of prejudice may arise when debtors attempt to amend their exemptions "after they have sought relief relating to the originally claimed

22

exemption." In re Gonzalez, 149 B.R. 9, 11 (Bankr. D. Mass. 1993) (debtors denied

increased homestead exemption amendment after lien avoidance litigation).

Prejudice has also been found to accrue where a debtor exhibits "inordinate delay" in

amending his exemption schedules.  In re Jelinek, 97 B.R. 429, 432 (Bankr. N.D. Ill.

1989) (discussing In re Patel, 43 B.R. 500 (N.D. Ill. 1984)).

> As stated by one court, prejudice may be found to attend such delay:
>
> To allow a debtor to amend his claim of exemptions at this
> late date would clearly be inequitable and would hinder the
> diligent administration of the bankruptcy estate by the
> Trustee.  Because to allow the Debtor to amend his claim of
> exemptions at this late date would have an adverse impact on
> creditors whose rights have attached to the assets of the
> bankruptcy estate and because a late amendment to the
> Debtor's claim of exemptions would hinder the diligent
> administration of the bankruptcy estate by the Trustee, the
> amendment is not seasonable and, therefore, not allowed.

In re Snow, 21 B.R. 598, 600 (Bankr. E.D. Cal. 1982).

> Phrased somewhat differently, "[a]t some point, the debtor's election of

either the state or federal exemptions must become irrevocable so as to avoid any unfair

prejudice to the trustee and unsecured creditors."  In re Brewer, 17 B.R. 186, 188 (Bankr.

M.D. Tenn.), aff'd, 22 B.R. 983 (M.D. Tenn. 1982); see In re Duggan, 4 B.R. 709, 711

(Bankr. N.D. Tex. 1980) ("[a]t some point the right to switch from one system to another

must end and there be some finality to a choice); In re Korff, 14 B.R. 189, 193 (Bankr.

E.D. Mich. 1981); see also In re Reed, 1995 WL 227389 (9th Cir. 1995) (debtor might

have been entitled to amend exemptions, but lost that entitlement by "plung[ing] the

bankruptcy estate into lengthy litigation," and by not requesting his amendment in a

seasonable manner).

In this contested matter, the trustee has demonstrated that prejudice would arise by permitting the debtor now to switch her exemption election from federal to state law.

The record is clear that the trustee has already undertaken a number of steps in order to sell the debtor's Wynnewood realty in reliance upon her limited homestead exemption under section 522(d)(1). He has engaged counsel, as well as a real estate broker and an appraiser. He has successfully litigated with the debtor over the extent of her federal homestead exemption, and twice filed pleadings to compel access to her real property, which access was granted. He has also commenced litigation to sell the non-debtor's interest in that property.

Furthermore, the trustee had placed the debtor on notice that he did not accept her assertion that her real estate was fully exempt, beginning as early as the first meeting of creditors in early October 2005. Certainly, the trustee's position regarding the existence of non-exempt equity in the realty should have been clear to the debtor no later than December 2004, when he asserted that such equity justified his opposition to her federal homestead exemption, and warranted reasonable access to that real property. Yet the debtor waited about six months to file an amendment changing her exemptions election to Pennsylvania law, during which time the trustee has expended considerable effort in seeking a sale.

Apparently, the debtor believes that the trustee has greatly overvalued her realty. And if her opinion of value proves correct, the property will be overencumbered and the trustee ultimately may not receive authority to sell under section 363. But if the trustee's opinion of value is correct, in light of the trustee's actions and the debtor's

delay, it would be inequitable to permit the debtor to change her mind and now utilize state law to exempt her property.  See In re Szymanski, 189 B.R. 5 (N.D. Ill. 1995); In re Jelinek.

Accordingly, for the aforementioned reasons, the trustee's objection to the debtor's amended exemption schedule, filed on May 27, 2005, will be sustained.  An appropriate order shall be entered.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                           :        Chapter 7

JENNIFER ST. HILL                   :

                    Debtor          :        Bankruptcy No. 04-30919F

...................................................

ORDER

...................................................

AND NOW, this 2nd day of September 2005, for the reasons stated in the

accompanying memorandum, it is hereby ordered that the trustee's objections to the

debtor's amended exemptions, filed with this court on or about May 27, 2005, are

sustained and those exemptions are disallowed.

_____
BRUCE FOX
United States Bankruptcy Judge

copies to:

Ms. Jennifer St. Hill
217 West Indian Creek Road
Wynnewood, PA 19096

Gretchen M. Santamour, Esquire
Wolf, Block, Schorr and Solis-Cohen, LLP
1650 Arch Street, 22nd Floor
Philadelphia, PA 19103

David A. Scholl, Esquire
6 St. Albans Avenue
Newtown Square, PA 19073